```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07.09.15

ALLAN ANDRADE,

        Petitioner,

-v-

DANIEL MARTUSELLO,

        Respondent.

No. 12-cv-6399 (RJS) (AJP)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Allan Andrade ("Petitioner") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 2 (the "Petition" or "Pet.")), challenging his conviction in New York Supreme Court, Bronx County, on one count of first degree manslaughter, for which he was sentenced to a term of twenty-five years of imprisonment. Now before the Court is the Report and Recommendation of the Honorable Andrew J. Peck, Magistrate Judge, recommending that the Petition be denied (Doc. No. 16 (the "Report" or "Rep.")), as well as Petitioner's objections to the report (Doc. No. 18 ("Obj.")). The relevant facts and procedural history relating to the Petition are set forth in detail in the Report. For the reasons set forth below, the Court adopts the Report in its entirety and denies the Petition.

I. LEGAL STANDARD

    A federal court may grant habeas corpus relief only if a claim that was adjudicated on the merits in state court (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearly

established Federal law means the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (internal quotation marks omitted). A state court decision is "contrary to" such a holding only where the state court "either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].'" *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 402 (2000)). An "'unreasonable application' of those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations omitted). A federal court should grant habeas relief only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011)).

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn,* 474 U.S. 140, 149 (1985)). When a party makes specific objections to a magistrate judge's findings or legal conclusions, the court must undertake a de novo review of the objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). However, "to the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will

review the Report strictly for clear error." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (quoting *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008)). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *SEC v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (quoting *Chen v. Bd. of Immigration Appeals*, 435 F.3d 141, 145-46 (2d Cir. 2006)).

## II. DISCUSSION

The petition asserts two claims, both of which the Report thoroughly addressed and rejected. Specifically, Petitioner argues that (1) the trial court violated his Sixth Amendment right to confront and cross-examine the witnesses against him when it admitted portions of a videotape into evidence at trial, and (2) his right to effective assistance of counsel under the Seventh Amendment and his right to due process under the Fourteenth Amendment were violated because he was shackled during the trial and because he was denied access to a writing instrument. The Court addresses each objection in turn.

### A. Admission of the Pallor Videotape

At trial, Petitioner argued that the incriminating statements he made to the police during his interrogation on December 26, 2002 were coerced. (Rep. at 3.) To rebut this contention, the prosecution sought to introduce portions of a videotape that police had shown to Petitioner during his interrogation. In that videotape, Petitioner's friend, Larvell Pallor, identified Petitioner as one of the gunmen in a separate related incident (the "Pallor videotape"). In essence, the prosecution sought to introduce the videotape in order to show that Petitioner *voluntarily* made incriminating statements after watching the Pallor videotape, and not as a result of coercion. The trial court

permitted the prosecution to introduce and play the Pallor videotape, but before doing so, gave a limiting instruction that instructed the jury to consider the Pallor videotape only as it pertained to the voluntariness of Petitioner's statements to the police on December 26, 2002, and not for the truth of the matters asserted in the videotape.

Petitioner argues that the admission of the Pallor videotape violated the Confrontation Clause because Pallor was not subject to cross-examination and his identification of Petitioner as one of the gunmen in the separate related incident was testimonial. (Rep. at 28.) The Report rejected this argument, noting that the videotape was introduced not for the truth of Pallor's statements, but to rebut Petitioner's argument that his statements to police were involuntary, which the Report concluded was permissible under *Tennessee v. Street*, 471 U.S. 409 (1985). (Rep. at 29.) The Report also pointed out that the trial court adequately and appropriately instructed the jury, both before the videotape was admitted and in the final jury charge, to consider the videotape only for this limited purpose. (Rep. at 29-30.) Accordingly, the Report concluded that admission of the videotape did not violate the Confrontation Clause. (Rep. at 28.)

Petitioner challenges the Report's conclusion on several grounds. First, Petitioner objects that the relevant standard is not whether the videotape was offered for something other than the truth, but whether it was offered for a "legitimate" non-truth purpose. (Obj. at 5.) Petitioner characterizes the link between the separate related shooting and the shooting for which Petitioner was convicted as "critical," and argues that because the only evidence identifying Petitioner as a gunman in the separate related incident was the Pallor videotape, the videotape must have been offered for the truth of the identification. (Obj. at 1-3.) Second, Petitioner suggests that the reasoning of *Street* applies only if a criminal defendant asserts that police forced him to adopt a co-defendant's confession and, even then, only if rebuttal of that defense is impossible without

4

admitting the co-defendant's confession. (Obj. at 5-7.) In this vein, Petitioner argues that even if the Pallor videotape could have been offered for a "legitimate" non-truth purpose, the prosecution should have been required to achieve that purpose through other, less prejudicial means. (Obj. at 9-11.) Third, Petitioner suggests that the prosecution should have called Pallor to testify, so he could have been subjected to cross-examination. (Obj. at 3.) Fourth, Petitioner argues that the trial court's limiting instructions were inadequate to neutralize the risk that the jury would consider the videotape for an improper purpose. (Obj. at 11-12.)

At the outset, the Court observes that almost all of Petitioner's objections "simply reiterate" points that were fully argued to Judge Peck, and therefore "the Court will review the Report strictly for clear error." *DiPilato*, 662 F. Supp. 2d at 339. Undertaking that review, the Court finds that the Report's conclusion that the trial court did not violate the Confrontation Clause when it admitted the Pallor videotape is not clearly erroneous, and therefore adopts it. Indeed, even if the Court were to undertake de novo review, the result would be the same.

In *Tennessee v. Street*, the Supreme Court held that the Confrontation Clause was not implicated when the prosecution sought to introduce an unavailable declarant's out-of-court statements to explain how and why a defendant made a confession. The defendant in *Street* challenged the voluntariness of his confession, claiming that the police officer who interrogated him had forced him to adopt the confession of a co-defendant. 471 U.S. at 410-11. To rebut this claim, the prosecution had the interrogating police officer read the co-defendant's confession into evidence to show that there were discrepancies between the defendant's confession and the co-defendant's confession. *Id.* The Supreme Court found that this "*nonhearsay* aspect of [the co-defendant's confession] – not to prove what happened at the murder scene but to prove what happened when [the defendant] confessed – raise[d] no Confrontation Clause concerns." *Id.* at

414 (emphasis in original). The Supreme Court also held that a court could rely on its limiting instructions to neutralize the risk that the jury would consider the confession for an improper purpose. *Id.* at 414-15 & 417 n.6.

The trial court's decision to permit the prosecution to play the Pallor videotape to rebut Petitioner's claim that his confession was coerced was not "contrary to," nor did it "involve[] an unreasonable application of," *Street*. Here, as in *Street*, the prosecution introduced Petitioner's own statements as evidence of his guilt, and Petitioner contested the voluntariness of those statements. Then, as in *Street*, the trial court permitted prosecutors to introduce an out-of-court statement to show the context under which Petitioner made his incriminating statements. And finally, as in *Street*, the trial court minimized the risk that the jury would consider the evidence for an improper purpose by giving appropriate limiting instructions.

The Court does not find Petitioner's attempts to distinguish *Street* to be persuasive. First, Petitioner argues that the Pallor videotape was particularly prejudicial because it provided a "critical" link between Petitioner and the separate related shooting. (Obj. at 1-3.) However, even if the Pallor videotape touched on a "critical" issue in the case, that is not a basis for distinguishing *Street*. In *Street*, the co-defendant confessed to the *very crime* charged in the indictment. Here, by contrast, Petitioner was not charged with the separate related shooting. Thus, if anything, the Pallor videotape touched on a much *less* critical issue than the co-defendant's confession in *Street*.

Second, Petitioner attempts to confine *Street* to its facts, arguing that its reasoning does not apply unless a defendant alleges that police forced him to adopt a co-defendant's confession and unless there are "no alternatives" to introducing the out-of-court statement. (Obj. at 5-6.) These arguments find no support in *Street*, however. The holding of *Street* is that out-of-court statements do not offend the Confrontation Clause if offered simply to explain "what happened when [the

defendant] confessed"; nothing in that opinion suggests that the admissibility of such statements depends on the *manner* in which a defendant alleges he was coerced. Petitioner makes much of the language in *Street* that there were "no alternatives that would have both assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence," 471 U.S. at 415, and argues that, here, the prosecution could have accepted a stipulation that Petitioner was shown the Pallor videotape. (Obj. at 6, 9-10.) Petitioner fails to mention, however, that this exact argument was considered and rejected by the Supreme Court in *Street*. In *Street*, the Supreme Court acknowledged that the prosecution could have avoided reading the co-defendant's confession into testimony by simply asking the interrogating officer whether the co-defendant's confession was consistent with the defendant's confession. 471 U.S. at 416-17. Nevertheless, the Supreme Court found that "such a rebuttal presentation was not the only option constitutionally open." *Id.* In other words, the mere fact that the prosecution could have made their argument another way does not mean it was a Confrontation Clause violation for them to introduce the out-of-court statement.

Third, Petitioner suggests that Pallor was not a credible witness and that the prosecution should have called him to testify so he could have been subjected to cross-examination. (Obj. at 3.) This argument too was considered and rejected in *Street*. As the Supreme Court observed, where an out-of-court statement is offered to show the circumstances of a defendant's confession, the truth of that out-of-court statement – and, relatedly, the credibility of the declarant – is beside the point. 471 U.S. at 416. Under these circumstances, cross-examination of the declarant serves no useful purpose (since it does not really matter whether the declarant is lying), and the defendant's Confrontation Clause right is satisfied by his ability to cross-examine the testifying police officer. *Id.* at 414, 416.

Fourth, Petitioner objects to the Report's finding that the trial court's limiting instructions adequately addressed the risk that the jury would consider the Pallor videotape for an improper purpose. Petitioner argues that, to the contrary, jurors cannot be presumed to follow instructions about how they may consider evidence. In support of this argument, Petitioner cites *Bruton v. United States*, 391 U.S. 123 (1968) and *Shepard v. United States*, 290 U.S. 96 (1933). Significantly, Petitioner fails to cite *Street* itself, which squarely addressed this point: "The assumption that jurors are able to follow the court's instructions fully applies when rights guaranteed by the Confrontation Clause are at issue." 471 U.S. at 415 n.6; *see also id.* at 417 ("In this context, we hold that the trial judge's instructions were the appropriate way to limit the jury's use of . . . evidence in a manner consistent with the Confrontation Clause."). Accordingly, the Court finds this objection to be meritless.

For the reasons stated above, the Court finds that even under de novo review the trial court's decision to admit the Pallor videotape was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the Court adopts the Report's recommendation and denies Petitioner's application for habeas relief on this ground.

B.  Shackling and Denial of Access to Writing Instrument

Petitioner next claims that he was deprived of his Fourteenth Amendment right to due process and his Seventh Amendment right to counsel because he was shackled during trial and not permitted to use a writing instrument. The Report rejected both arguments, pointing out that: (1) there is nothing in the record indicating that the shackles were visible to the jury, (2) the trial court conducted a case-specific inquiry to determine whether security concerns justified shackling, and (3) the trial court offered Petitioner the use of a tape recorder in place of a writing instrument, which Petitioner declined, and empaneled prospective jurors in smaller groups so Petitioner could

8

communicate more easily with his counsel during jury selection. (Rep. at 35-40.) Petitioner objects to these findings, arguing that: (1) the sheer length of the trial requires an inference that the shackles were visible at some point, (2) the trial court failed to hold an evidentiary hearing on its courtroom security concerns, and (3) the trial court's accommodations were not a "meaningful substitute" for a writing instrument. (Obj. at 13-19.)

Again, each of Petitioner's objections simply reiterate arguments that were presented to Judge Peck and considered in the Report. Accordingly, the Court need only apply clear error review and, applying that review, finds that the Report's recommendation was not clearly erroneous. Furthermore, even if the Court were to apply de novo review, it would reject Petitioner's arguments for precisely the reasons stated in the Report.

Under *Deck v. Missouri*, shackling a criminal defendant during trial raises constitutional concerns only where the shackles are "visible to the jury." 544 U.S. 622, 624 (2005). Thus, as the Report correctly points out, the complete lack of evidence in the record that Petitioner's shackles were visible to the jury is fatal to Petitioner's due process claim. Petitioner cites to portions of the transcript purportedly indicating that the handcuffs and leg shackles were visible to the jury. The excerpts, however, indicate nothing of the sort and are drawn exclusively from exchanges that took place outside of the presence of the jury. (Rep. at 37.) Petitioner's contention that the draping installed by the trial court failed to hide his handcuffs is also belied by the record.[1] Perhaps realizing the weakness of his first argument, Petitioner also asserts – without citation to any case law – that the lengthiness of the trial requires the Court to draw an inference that at *some*

---

[1] There is some dispute about whether Petitioner's hand restraints were visible during jury selection when Petitioner pushed aside a jacket that had been provided to him to obscure his hands (and hand restraints) from the jury's view. As the Report correctly pointed out, even assuming that Petitioner did so, there was no due process violation, since a defendant cannot choose to make his shackles visible and then complain that the visibility of the shackles prejudiced the jury. *DeLeon v. Strack*, 234 F.3d 84, 88 (2d Cir. 2000).

point *some* juror must have seen Petitioner in shackles. (Obj. at 17-18.) The Court declines to engage in speculation that is entirely ungrounded in the trial transcript about what the jury could or could not have seen.

Similarly meritless is Petitioner's argument that he was deprived of his right to counsel because the trial court refused to let him use a writing instrument during trial. Petitioner does not dispute that the trial court found that he posed a danger in light of his involvement in a slashing incident at Riker's Island prior to trial. (Rep. at 38.) Nor does he dispute that, as an accommodation, the trial court offered to provide him with a tape recorder[2] and empaneled prospective jurors in smaller groups to allow him to communicate more effectively with counsel during jury selection. (Obj. at 18-19.) Petitioner cites no case law holding that access to *any* communication aid is constitutionally required, much less establishing a constitutionally significant difference between a tape recorder and a writing instrument. In *Deck*, the Supreme Court observed that one of the constitutional concerns raised by shackling is the risk of interference with a defendant's ability to communicate with counsel. 544 U.S. at 631. It is clear from the context of that opinion, however, that this observation was focused on situations in which a defendant is gagged. *See id.* (citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970) (raising possibility that criminal defendant could be bound and gagged for disruptive courtroom conduct)). Not letting Petitioner to use a pencil is a far cry from binding and gagging him or removing him from the courtroom altogether. Nor does he specify how the lack of a writing instrument prejudiced his ability to communicate with his counsel, or why the tape recorder – which he declined – was

---

[2] Presumably, Petitioner was offered a tape recorder so that he could contemporaneously record his thoughts and observations – which he could later refer to during discussions with counsel – much the way that he would have used pen and paper to take notes.

constitutionally inferior for purposes of conferring with counsel. Accordingly, the Court rejects Petitioner's application for relief on this ground.

### III. CONCLUSION

For the reasons set forth above, the Court hereby adopts the Report in its entirety and DENIES the Petition. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated: July 8, 2015
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE